**Affirmed and Memorandum Opinion filed August 20, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00522-CV

---

### FRED SAMSON, Appellant

### V.

### JAMES ALEXANDER GHADIALLY, Appellee

---

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2010-28167**

---

## M E M O R A N D U M   O P I N I O N

Fred Samson sued an attorney, James Alexander Ghadially, after Ghadially declined to file a medical malpractice lawsuit against Samson's former surgeon. The trial court signed a summary judgment for Ghadially, and Samson appeals. We affirm.

BACKGROUND

Samson alleged in his first amended petition (the live pleading) that he met with Ghadially in 2008 about a potential medical malpractice case. Samson wished to hire Ghadially to file a lawsuit against Henry Small, M.D., who Samson alleged had inserted pedicle screws into Samson, without his consent, in November 2006 during a "bone craft" procedure. In August 2008, Ghadially sent Samson a letter stating that Ghadially would not be able to pursue the medical malpractice case because he could not locate an expert willing to testify that Samson's damages were a result of the surgery. In his letter, Ghadially advised Samson of the imminent November 2008 statute of limitations deadline to file his case, should he wish to pursue it. Ghadially also advised Samson of the need for having an expert witness within 120 days from the date suit is filed.

Samson, acting pro se, then filed a medical malpractice action against Small and others within the statute of limitations. The trial court ultimately dismissed the suit because Samson failed to file an expert medical report. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West 2011). The First Court of Appeals affirmed the dismissal. *Samson v. Small*, No. 01-09-00451-CV, 2011 WL 1529729, at *1 (Tex. App.—Houston [1st Dist.] Feb. 24, 2011, no pet.).

On May 4, 2010, Samson filed this action against Ghadially, again acting pro se. In his live pleading at the time of summary judgment, Samson alleged claims for (1) "fraud by misrepresentation";[1] (2) "negligence / or alternatively

---

[1] Samson alleged, "Ghadially made false representation for purpose to induce plaintiff to enter into a contract to defends his legal claims in Harris County Court. . . . Plaintiff justifiably relied on defendants false representation/promise entering in contract, that he do not look for another attorneys to defend his legal right."

2

negligence per se";[2] (3) "breach of fiduciary duty";[3] and "breach of contract."[4] Samson requested $5 million in damages and also pled for punitive and exemplary damages. The gravamen of the facts supporting Samson's petition is that Ghadially agreed to pursue Samson's claims against Small and then rejected the case two months before the limitations period expired.[5]

On November 22, 2011, Ghadially filed a traditional and no-evidence motion for summary judgment. In the motion, Ghadially explained that the parties had exchanged written discovery and Ghadially had designated experts, but Samson failed to designate any expert witnesses by the deadline. Ghadially relied on the following bases for summary judgment: (1) Samson's fraud, breach of fiduciary duty, and breach of contract claims failed as a matter of law as fractured legal malpractice claims; and (2) Samson had no evidence of any element for all of his claims. In particular, Ghadially argued that Samson had no evidence of negligence or causation for the legal malpractice claim because Samson failed to provide any legal or medical expert testimony.

---

[2] Samson alleged, "Defendant own Plaintiff the duty to maintain and defend his claim in Harris County."

[3] Samson alleged,

Defendant breached their fiduciary duties to Plaintiff by [1] inducing and facilitating Contract deceive plaintiff that he will defend his claims in Court from May till September 2008, defendant do not made any attempts to file claim in District Court (2) failing to disclose that he do not intent to file claim and defend Plaintiff claims Court, intentionally avoid contact with Plaintiff for long time (3) fraudulently induced to Plaintiff to contract in wrong pretense.

[4] Samson alleged, "A stated above defendatn's [sic] fraudulently induced plaintiff to contract, on wrong pretenses, only to deceive that Plaintiff."

[5] Samson alleged, for example, that "only two month before statues [sic] limitation expires was impossible to Samson find an attorneys in last second. [S]uch act was intentionally, deceive malice and cruelty to."

Samson filed a response and asked for additional time.[6] Samson did not attach any affidavits. On January 31, 2012, the trial court ordered the hearing on Ghadially's motion reset to March 9 and ordered that "Samson shall have until February 20 to file competent summary judgment evidence in the form of affidavits prepared by qualified medical and legal experts to meet his burden of proof on his cause of action." Samson did not file any such affidavits. Instead, on March 9, he sought another continuance to conduct discovery; objected to the summary judgment process and the constitutionality of the rules applicable to the merits of his cause; and attached the Nuremburg Code.

The trial court granted Ghadially's motion on March 9. Samson filed a motion to reconsider and then a motion for new trial. After the trial court denied the motion to reconsider, Samson filed a motion to recuse the trial judge. The judge declined to recuse, and thus, the matter was referred to Administrative Judge Olen Underwood, who denied the motion to recuse. Samson appealed.

### ANALYSIS

Giving the most liberal construction to Samson's pro se appeal and briefing, he challenges the summary judgment, the denial of his motion for new trial, and the denial of his motion to recuse.[7] We address each matter in turn.

---

[6] Samson alleged in his response for the first time that Ghadially, who was also a medical doctor, shared an office with Small and that the two were "co-partners with Foundation Surgical Hospital." These allegations do not appear in Samson's petition, and the record contains no evidence to support them. Samson filed documents including website print-outs, but none of the documents show that Ghadially and Small shared an office or were partners. In his appellate brief, Samson also does not cite to the record to support this contention.

[7] We construe Samson's briefing liberally as the First Court did in his appeal of the underlying medical malpractice case, but we also agree that "[p]ro se litigants are held to the same standards as attorneys and must comply with all applicable and mandatory rules of pleading and procedure." *Samson*, 2011 WL 1529729, at *2.

## I.    Summary Judgment

Samson contends generally that (1) Texas law regarding summary judgment and expert affidavits is unconstitutional; (2) the trial court granted summary judgment on claims not addressed in Ghadially's motion, such as conspiracy to defraud and the Deceptive Trade Practices–Consumer Protection Act (DTPA);[8] and (3) there are genuine issues of material fact that preclude summary judgment and merit a new trial.

### A.    *Constitutional Challenges*

Citing the Texas Constitution, Samson notes he has a constitutional right to a trial by jury.  *See* Tex. Const. art. I, § 15; Tex. Const. art. V, § 10.  He contends that requiring expert affidavits for summary judgment, and in particular affidavits under Chapter 74 of the Civil Practice and Remedies Code,[9] violates his constitutional rights.  He cites no authority for his contentions, and we note that courts have repeatedly upheld the constitutionality of the summary judgment process[10] and the expert report requirement of Chapter 74.[11]  Regardless, our holding in this case does not depend on the Chapter 74 expert report requirement.

Samson's constitutional challenges are overruled.

---

[8] Tex. Bus. & Com. Code Ann. §§ 17.41–17.63 (West 2011).

[9] Tex. Civ. Prac. & Rem. Code Ann. ch. 74 (West 2011).

[10] *See, e.g.*, *Fertic v. Spencer*, 247 S.W.3d 242, 251 (Tex. App.—El Paso 2007, pet. denied); *Lattrell v. Chrysler Corp.*, 79 S.W.3d 141, 150 (Tex. App.—Texarkana 2002, pet. denied); *Carrabba v. Employers Cas. Co.*, 742 S.W.2d 709, 717 (Tex. App.—Houston [14th Dist.] 1987, no writ).

[11] *See generally Hebert v. Hopkins*, 395 S.W.3d 884, 896–97 (Tex. App.—Austin 2013, no pet.) (collecting cases and noting that "every court that has considered similar challenges to chapter 74's expert-report requirement, including this Court, has rejected them").

## B. *Claims Subject to Summary Judgment*

Samson contends that the trial court erred by granting summary judgment to Ghadially when Ghadially did not move for summary judgment on several of Samson's claims, such as conspiracy to defraud and DTPA violation. We disagree.

"Our rules provide that amended pleadings and their contents take the place of prior pleadings." *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Hous. Sys.*, 255 S.W.3d 619, 633 (Tex. 2008) (citing TEX. R. CIV. P. 65). "So, causes of action not contained in amended pleadings are effectively dismissed at the time the amended pleading is filed, except for possible circumstances not present here." *Id.*

Samson's original petition included claims such as conspiracy to defraud and DTPA, but Samson's first amended original petition—the live pleading— listed only four claims: fraud, negligence or negligence per se, breach of fiduciary duty, and breach of contract. Samson effectively dismissed claims pleaded in his original petition by filing an amended petition that omitted the previously pleaded claims. Thus, Ghadially had no burden to negate claims that Samson abandoned, and Ghadially moved for summary judgment on all claims included in Samson's live pleading.

Samson's issues concerning the dismissed claims are overruled.

## C. *No Genuine Issues of Material Fact*

Without citing any record evidence, Samson contends there is a genuine issue of material fact on each of his claims. Ghadially contends that Samson impermissibly fractured his legal malpractice claim, and this claim fails because Samson failed to adduce any expert testimony on the issue of causation.

## 1. *Summary Judgment Standard of Review*

We review summary judgments de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). We take as true all evidence favorable to the nonmovant, indulging reasonable inferences and resolving doubts in the nonmovant's favor. *Raynor v. Moores Mach. Shop, LLC*, 359 S.W.3d 905, 907 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Joe*, 145 S.W.3d at 157; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)).

"We sustain a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Id.* at 907–08 (citing *King Ranch*, 118 S.W.3d at 751). For a traditional summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Joe*, 145 S.W.3d at 157. A defendant may satisfy this burden by conclusively negating at least one essential element of each of the plaintiff's causes of action. *Raynor*, 359 S.W.3d at 907 (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)).

"Evidence is conclusive only if reasonable people could not differ in their conclusions." *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005)). There is more than a mere scintilla of evidence if reasonable and fair-minded people could differ in their conclusions. *Id.* at 908 (citing *King Ranch*, 118 S.W.3d at 751).

## 2. *Impermissible Fracturing of Legal Malpractice*

"Parties are prohibited from fracturing a professional negligence claim into multiple causes of action, but this prohibition does not necessarily foreclose the simultaneous pursuit of a negligence-based malpractice claim and a separate breach of fiduciary duty or fraud claim when there is a viable basis for doing so." *Meullion v. Gladden*, No. 14-10-01143-CV, 2011 WL 5926676, at *4 (Tex. App.—Houston [14th Dist.] Nov. 29, 2011, no pet.) (mem. op.). "But to do so, 'the plaintiff must do more than merely reassert the same claim . . . under an alternative label.'" *Id.* (quoting *Duerr v. Brown*, 262 S.W.3d 63, 70 (Tex. App.— Houston [14th Dist.] 2008, no pet.)). "Determining whether allegations against a lawyer—labeled as breach of fiduciary duty, fraud, or some other cause of action—are actually claims for professional negligence is a question of law to be determined by the court." *Id.* (citing *Duerr*, 262 S.W.3d at 70).

The central complaint in Samson's petition for all of his claims is that Ghadially said he would prosecute Samson's medical malpractice claim against Small and others, and then Ghadially avoided contact with Samson, did not file a lawsuit, and dismissed Samson as a client shortly before the expiration of the limitations period.[12] Despite Samson's claim of Ghadially's intentional misrepresentation, this is essentially a claim for professional negligence. *See id.* (concluding that a client's claims for fraud, breach of fiduciary duty, and breach of contract were claims for professional negligence when the client alleged the attorney drafted a habeas petition that the attorney "knew would fail"); *McInnis v. Mallia*, No. 14-09-00931-CV, 2011 WL 782229, at *7 (Tex. App.—Houston [14th Dist.] Mar. 8, 2011, pet. denied) (mem. op.) (concluding that a client's claims for fraud and breach of fiduciary duty were claims for professional negligence when

---

[12] *See supra* notes 1–5 and accompanying text.

the client alleged the attorneys nonsuited a defendant because the attorneys had a professional relationship with the defendant). Generally, allegations concerning an attorney's delay or failure to handle a matter entrusted to the attorney give rise to a claim for professional negligence. *See, e.g.*, *McInnis*, 2011 WL 782229, at *7. In particular, Samson has failed to allege—let alone prove—that Ghadially obtained an improper benefit from the attorney–client relationship, which is a necessary element of a breach of fiduciary duty claim. *See id.*

Having determined that Samson's allegations raise only a claim for professional negligence, we must determine whether Samson has adduced any evidence of causation.

### 3. *No Evidence of Causation*

In a professional negligence case, the plaintiff must prove that the "plaintiff would have prevailed on the underlying cause of action and would have been entitled to judgment." *Id.* at *3. "This causal link is known as the 'suit within a suit' requirement and generally must be proved by expert testimony." *Id.* Expert testimony is required whenever the connection between the alleged acts of malpractice and the harm suffered by the client is beyond a jury's common understanding. *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119–20 (Tex. 2004).

The causal link in this case is beyond a lay person's common understanding. Samson failed to adduce any evidence that he would have prevailed against Small if Ghadially had prosecuted the medical malpractice claim, or if Ghadially had not delayed in informing Samson that the claim could not be prosecuted.[13] Samson

---

[13] Indeed, Samson's lawsuit against Small was dismissed for the very reason that Ghadially informed Samson that Ghadially could not pursue the claim—lack of medical expert testimony.

filed no expert testimony, by affidavit or otherwise, and thus adduced no evidence that any of his damages were caused by Ghadially's alleged negligence. For this reason, the trial court properly granted Ghadially's motion for summary judgment.[14]

Samson's issues concerning the trial court's summary judgment are overruled.

## II. Motion for New Trial

Samson contends that the trial court erred by denying his motion for new trial. However, Samson did not file evidence with his motion that was unavailable to him at the time the trial court granted Ghadially's motion for summary judgment, and he made no new arguments that would defeat summary judgment. *See, e.g.*, *McMahan v. Greenwood*, 108 S.W.3d 467, 500 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("Generally, a party may not rely on new evidence in a motion for new trial without showing that the evidence was newly discovered and could not have been discovered through due diligence prior to the ruling on a summary judgment motion."). So, having concluded that the trial court properly granted summary judgment to Ghadially, we likewise conclude that the trial court did not abuse its discretion in denying Samson's motion for new trial. *See, e.g.*, *Humphrey v. AIG Life Ins. Co.*, No. 14-08-00973-CV, 2010 WL 2635643, at *6 (Tex. App.—Houston [14th Dist.] July 1, 2010, pet. denied) (mem. op.).

Samson's issues concerning his motion for new trial are overruled.

---

[14] Because Samson adduced no evidence of any of his claims, he also could not establish exemplary damages. *See, e.g.*, *Hancock v. Variyam*, 400 S.W.3d 59, 71 (Tex. 2013).

## III. Recusal

Finally, Samson contends the trial judge should have been recused for apparent partiality or personal bias or prejudice. *See* Tex. R. Civ. P. 18b(b)(1)–(2). From reviewing his appellate brief and the verified motion filed in the trial court, it appears that Samson's primary reasons for requesting recusal are the trial judge's adverse rulings made during the case.[15] Samson also alleged the trial court told Samson to "not interrupt the Court" and to "go and change[] the law," and that the court would "not let [Samson's] cause go to trial by jury."

We review the denial of a motion to recuse for an abuse of discretion. TEX. R. CIV. P. 18a(j). "[O]pinions formed by the judge on the basis of facts introduced or events occurring during proceedings do not constitute a basis for a recusal motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Ludlow v. DeBerry*, 959 S.W.2d 265, 271 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (citing *Liteky v. United States*, 510 U.S. 540, 554–56 (1994)). Samson, as the moving party, had the burden to show that the trial court's conduct emanated from a "source other than the judge's opinion based on his perception of the evidence presented," or that the trial judge's actions indicated a "'high degree of favoritism or antagonism as to make fair judgment impossible.'" *Id.* at 283 (quoting *Liteky*, 510 U.S. at 555).

Assuming for argument's sake the truth of Samson's self-serving affidavit, he nonetheless failed to show that the trial judge's conduct emanated from an extrajudicial source or evidenced a high degree of favoritism or antagonism as to

---

[15] For example, Samson alleged in the motion that the trial judge "acted prejudicial when signed NO Evidence Summary Judgment" and "was prejudicial because Second Plaintiff's Motion for Continuance was not opposed by Defendant." Samson testified by affidavit that the trial judge "acts as attorneys." Samson testified that the trial judge "grant opposite party many relief that party had not been entitled to," and the judge "act prejudicial to Plaintiff when grant defendant Motion for Summary Judgment."

11

make fair judgment impossible. *See, e.g.*, *id.* at 268–69, 283 (no abuse of discretion to deny recusal when the trial court told the jury it had delivered the worst verdict the court had heard in over eight years, and the trial court later granted a motion for new trial and then summary judgment in favor of the party who lost at trial). Administrative Judge Underwood could have reasonably concluded that the remarks Samson attributed to the trial judge regarding "change the law" and "no jury trial" reflected a frustration over Samson's challenges to summary judgment procedure and Samson's insistence, contrary to well-settled law, that the summary judgment rules must bend to the right to trial by jury. The admonishment of the trial court could reflect a similar frustration with Samson's disregard of courtroom procedures. And Judge Underwood could have reasonably concluded that he was not presented with any evidence that the trial judge's statements and rulings emanated from an extrajudicial source or revealed deep-seated and unequivocal antagonism that rendered fair judgment impossible. *See id.* 284.

Samson's issues concerning the motion to recuse are overruled.

## CONCLUSION

We have liberally construed Samson's appellate brief and overruled all of his issues fairly raised by the briefing. The trial court's judgment is affirmed.


/s/     Sharon McCally
                    Justice

Panel consists of Justices Christopher, Jamison, and McCally.